**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| NANCY WILLIAMS, | : | |
| | : | Case No. |
| T.T., and | : | |
| | : | |
| JUSTIN WILLIAMS. | : | Judge |
| | : | |
| Plaintiffs, | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | |
| CUYAHOGA COUNTY; | : | |
| | : | |
| JACQUELINE FLETCHER, in her official | : | |
| capacity as Director of CUYAHOGA COUNTY | : | |
| DIVISION OF CHILDREN AND FAMILY | : | |
| SERVICES; | : | |
| | : | |
| CHRIS RONAYNE, in his official capacity as | : | |
| County Executive of CUYAHOGA COUNTY; | : | |
| | : | |
| and | : | |
| | : | |
| MATT DAMSCHRODER, in his official | : | |
| capacity as Director of the OHIO | : | |
| DEPARTMENT OF JOB AND FAMILY | : | |
| SERVICES. | : | |
| | : | |
| Defendants. | : | |
| | : | |

## I.  PRELIMINARY STATEMENT

  1.  Plaintiffs have been prevented from working in child care and other child-serving

institutions due to administrative dispositions by the Cuyahoga County Division of Children

and Family Services (CCDCFS) made without adequate notice of the alleged acts or a hearing prior to the disposition.  At the post-disposition meeting, Plaintiffs were not presented with the evidence against them; given an opportunity to challenge any evidence through cross-examination, testimony under oath, or the ability to subpoena witnesses; and no standard of proof was applied to the final decision.

2.      After CCDCFS makes a disposition of neglect or abuse, the disposition is held in the Statewide Automated Child Welfare Information System (SACWIS) which in Ohio functions as both a case management system for child welfare records and a child abuse and neglect registry. SACWIS is used for background checks for employment in child care centers, youth shelters, and youth residential facilities. A substantiated disposition of any type of neglect or abuse prevents an individual from working in child care centers for ten years. Substantiated and indicated dispositions will appear on background checks for individuals applying for employment at youth shelters and residential facilities forever.

3.      The minimum guidelines for appealing a disposition of abuse or neglect are set by the Ohio Department of Job and Family Services (ODJFS). ODJFS' regulations do not require adequate notice of the alleged acts or a pre-disposition hearing or require presentation of evidence, the ability to challenge evidence, or a standard of proof at a post-disposition hearing.

4.      ODJFS also issues the decisions on an individual's eligibility to work in child care. In this role, ODJFS has failed to provide an opportunity to be heard and standard of proof regarding an individual's fitness to work in child care.

5.      Plaintiffs seek damages and declaratory and injunctive relief to compel the Defendants Cuyahoga County, Jacqueline Fletcher, and Chris Ronayne, in their official capacities, to remove Plaintiffs' dispositions from SACWIS, compensate them for their inability

to work in child care and other child-serving institutions, and rewrite CCDCFS' procedures for challenging dispositions.

6.     Plaintiffs seek injunctive relief to compel Defendant Matt Damschroder, Director of the Ohio Department of Job and Family Services (ODJFS), to set the minimum procedures necessary for counties to provide an individual challenging a disposition of neglect or abuse and provide due process when considering an individual's eligibility to work in child care.

## II.     JURISDICTION AND VENUE

7.     Jurisdiction of this Court is appropriate pursuant to 28 U.S.C. § 1331 as this action arises under the Constitution and laws of the United States.

8.     Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

9.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District, and because all Defendants are responsible for enforcing the laws relevant to this litigation in this District.

## III.     PARTIES

10.    Plaintiff Nancy Williams is a resident of Cleveland, Ohio. Ms. Williams was denied a job and is unable to work in child care because of a substantiated disposition of medical neglect by CCDCFS.

11.    Plaintiff T.T. is a resident of South Euclid, Ohio. T.T. was terminated from her job and is unable to work in child care because of a substantiated disposition of medical neglect by CCDCFS.

12.     Plaintiff Justin Williams is a resident of Canton, Ohio.  Mr. Williams is unable to work with youth in youth shelters or residential facilities because of an indicated disposition by CCDCFS.

13.     Defendant Jacqueline Fletcher is the Director of CCDCFS, a subdivision of Cuyahoga County. Director Fletcher is sued in her official capacity.

14.     CCDCFS enters case records in SACWIS, makes administrative abuse and neglect dispositions, sets its policy on disposition appeals, and conducts meetings on appeals of abuse and neglect dispositions.

15.     Defendant Chris Ronayne is the County Executive of Cuyahoga County. Defendant Ronayne is sued in his official capacity.

16.     Cuyahoga County is the political subdivision responsible for dispositions and policies of CCDCFS.

17.     Defendant Matt Damschroder is the Director of ODJFS.  He is sued in his official capacity and for declaratory and injunctive relief only.

18.     ODJFS is the agency responsible for creating and enforcing the State of Ohio's regulations regarding challenges to dispositions of neglect and abuse and eligibility to work in child care.

19.     As Director of ODJFS, Defendant Damschroder is responsible for enforcing state and federal laws governing ODJFS and for the development, maintenance, and enforcement of all Department policies, practices, customs, and usages (hereinafter, collectively "policies") that ODJFS pursues and are in effect.

20.     Each of the Defendants is responsible in some manner for the events and happenings referred to herein that are the legal cause of injury and damages to Plaintiffs as herein alleged.

21.     In committing the acts and omissions described, Defendants and each of them, separately and/or in concert, have been and are acting under color of the statutes, ordinances, regulations, customs, policies, and usages of the State of Ohio and/or Cuyahoga County.

## IV.     STATUTORY AND REGULATORY BACKGROUND

### *County Investigations of Abuse or Neglect*

22.     Each county in Ohio has a public children services agency (PCSA) which receives reports of suspected child neglect and abuse from mandatory reporters and the general public pursuant to Ohio Revised Code § 2151.421.

23.     County-level PCSAs investigate the allegations of suspected abuse and neglect pursuant to the relevant sections in Ohio Administrative Code § 5101:2-36.

24.     These investigations are separate from a juvenile court's consideration of a petition accusing a parent of abuse or neglect of a child and requesting protective custody or removal of a child from the home. In fact, the PCSA's investigation and disposition is entirely outside the court system.

25.     An individual accused of abuse or neglect is not provided a written statement of the specific acts which are alleged to constitute abuse or neglect, given the opportunity to inspect the evidence against them, nor informed of the identity of the person who made the allegations.

26.     Individuals do not have a right to counsel during the investigation.

27.     A PCSA may infer guilt from an individual's refusal to participate in the investigation.

5

28.     At the close of an investigation, county PCSAs complete a disposition pursuant to Ohio Administrative Code § 5101:2-36-03(V).

29.     The possible case dispositions at the conclusion of a PCSA's investigation are: (a) substantiated, (b) indicated, (c) unsubstantiated, (d) family moved-unable to complete assessment/investigation, (e) family moved out of county – refer to appropriate PCSA, or (f) unable to locate. *See* OHIO ADMIN. CODE 5101:2-1-1(B)(46).

30.     A substantiated report is "a report disposition in which there is an admission of child abuse or neglect by the person responsible; an adjudication of child abuse or neglect in court; or other forms of confirmation deemed valid by the Public Child Serving Agency." OHIO ADMIN. CODE 5101:2-1-01(B)(313).

31.     An indicated report means "there is circumstantial or other isolated indicators of child abuse or neglect lacking confirmation; or a determination by the caseworker that the child may have been abused or neglected based upon completion of an assessment/investigation." OHIO ADMIN. CODE 5101:2-1-01(B)(161).

32.     An unsubstantiated report is "the report disposition in which the assessment/investigation determined no occurrence of child abuse or neglect." OHIO ADMIN. CODE 5101:2-1-01(B)(344).

33.     The definitions of substantiated, indicated, and unsubstantiated in the Ohio Administrative Code assign no clearly defined standard of proof required for the persons tasked with investigating the reports.

34.     The definitions of abuse and neglect in Ohio Revised Code §§ 2151.03 and 2151.031 also do not provide a standard of proof relevant to the administrative disposition process.

35.     In contrast, when considering a judicial adjudication of abuse or neglect, a juvenile court considers whether the PCSA has proven the pled definition of abuse or neglect by clear and convincing evidence. OHIO REV. CODE ANN. § 2151.35(A)(1) (West 2021).

36.     Within two working days of completing an investigation into a report of suspected neglect or abuse, the PCSA is supposed to notify the alleged perpetrator in writing of the report disposition, the right to appeal, and the method by which the alleged perpetrator may appeal the disposition. *See* OHIO ADMIN. CODE 5101:2-36-03(AA)(2).

37.     The disposition is entered into SACWIS pursuant to Ohio Administrative Code § 5101:2-33(70)(G). SACWIS is both the case management system for Ohio's PCSAs and Ohio's child abuse and neglect registry which is checked by certain employers before and at appointed times during employment. The disposition is entered in SACWIS regardless of whether the agency takes any further action in the matter such as filing a petition in juvenile court for court supervision of the family or removal of the children.

### *State Guidelines for Disputing Abuse or Neglect Dispositions*

38.     Ohio Administrative Code § 5101:2-33-20 provides the State guidelines for counties to use when developing policies for individuals to dispute a disposition of abuse or neglect.

39.     Each county must develop and implement a written policy for reviewing and resolving a disposition appeal by an individual who disagrees with the disposition of a report of abuse or neglect. *See* OHIO ADMIN. CODE 5101:2-33-20(A)(2).

40.     Ohio Administrative Code § 5101:2-33-20(B) outlines the information that must be included in the policy—such as the method of review and response to the complaint, the

office or individual involved in conducting the disposition appeal hearings, and the establishment of reasonable time frames—without requiring any specific answer on those topics.

41.     The person conducting the hearing cannot be involved in the case, including the investigation and approval of the disposition. *See* OHIO ADMIN. CODE 5101:2-33-20(D).

42.     The PCSA personnel facilitate the disposition appeal hearing and are supposed to consider the totality of the information including the assessment/investigation information contained in the case record which led to the disposition as well as any information presented by the PCSA and the appellant. *See* OHIO ADMIN. CODE 5101:2-33-20(F).

43.     The PCSA shall change the disposition if any of the following circumstances occur: 1) the disposition was made in error; 2) the appellant did not engage in conduct constituting child abuse or neglect as defined in the Ohio Revised Code; 3) the disposition is not supported by the totality of the information presented by the appellant or the PCSA or contained in the case record. *See* OHIO ADMIN. CODE 5101:2-33-20(G).

44.     This regulation provides no standard of proof, such as preponderance of the evidence, to weigh the information presented.

45.     The PCSA's decision regarding the disposition appeal is final and is not subject to state hearing review under Ohio Revised Code § 5101.35, which allows for state hearings in other public benefit programs. *See* OHIO ADMIN. CODE 5101:2-33-20(H).

46.     When a PCSA hears a disposition appeal, it must document the disposition appeal hearing process and dispositions in the case record, update SACWIS, notify the principals of the report in writing as to the revised disposition, and maintain all documents submitted or reviewed during the disposition appeal hearing in the case record. *See* OHIO ADMIN. CODE 5101:2-33-20(I).

### *Cuyahoga County Process to Dispute Dispositions of Abuse or Neglect*

47.     CCDCFS's disposition appeal process is detailed in Policy Number (PN) 2.03.05, Appeals of Report Disposition. EXHIBIT 1.

48.     Under the policy, once a disposition of abuse or neglect is made, a disposition letter should be mailed to an individual notifying them of the outcome of the investigation and their right to appeal. *See* EXHIBIT 1, PN 2.03.05(I)(A).

49.     CCDCFS' disposition letter includes a summary label of the type of abuse or neglect (e.g., medical neglect, out-of-home care neglect), the name of the alleged victim, the date the report was received, the date the investigation concluded, and the disposition. Notably, CCDCFS' disposition letter does not include details of the acts alleged to constitute neglect or abuse or information obtained during the investigation of the report. Nor does the letter include any other information that would allow an individual to be able to challenge the allegation of the reported conduct. EXHIBIT 2.

50.     An individual can appeal an indicated or substantiated disposition within 30 calendar days of the date of the disposition letter or later if good cause is shown. *See* PN 2.03.05(II)(A), (III).

51.     The appeal must be submitted to the CCDCFS Customer Relations Unit, include specific information, and attach the disposition letter. *See* EXHIBIT 1, PN 2.03.05(II)(C), (E).

52.     It is the practice of CCDCFS to deny individuals appealing their dispositions any information about the evidence or investigation against them even when presented with a specific request for such evidence.  In support of this denial, CCDCFS cites to Ohio Revised Code 5101.131, 2151.421(I) and 5153.17 and Ohio Administrative Code 5101:2-33-21, concerning the confidentiality of child welfare records.

53.     The opportunity for an individual to be heard on their disposition appeal has no indicia of a hearing and is therefore referred to below as a meeting.

54.     Individuals appealing dispositions in Cuyahoga County are not given the opportunity to:

        *A.*  review evidence against them prior to the disposition appeal meeting;

        *B.*  learn about the evidence against them in the meeting;

        *C.*  hear testimony against them in the meeting;

        *D.*  cross-examine any witness who made allegations against them in the meeting;

        *E.*  subpoena witnesses;

        *F.*  have witnesses testify under oath;

        *G.*  be heard by a neutral hearing officer not employed by CCDCFS;

        *H.*  have a record made of the meeting; or

        *I.*  record objections to information or questions discussed in the meeting.

55.     Cross-examination is specifically prohibited on page three of Information and Responses to Frequently Asked Questions for those Seeking to Appeal a Disposition Issued by the CCDCFS (FAQ). EXHIBIT 3. The FAQ is specifically referenced under Forms on the last page of PN 2.03.05. EXHIBIT 1.

56.     The other missing procedures are not mentioned in PN 2.03.05 or the FAQ.

57.     the meeting is limited to providing the appellant a reasonable amount of time to present new information (regarding allegations that are not identified to the appellant, thus leaving them to guess about what they are accused of doing) and for the panel to ask questions of the individual. *See* EXHIBIT 1, PN 2.03.05(VI)(B)(2), PN 2.03.05(VI)(B)(4).

58.     The panel chair may change the disposition if the panel concludes that any of the following occurred: 1) the report disposition was made in error; 2) the appellant did not engage in conduct constituting child abuse or neglect; or 3) the report disposition is not supported by the totality of the information presented by the appellant or the agency or contained in the case record. *See* PN 2.03.05(VII)(A).

59.     CCDCFS issues the appeal decision on a form letter which indicates a summary description of the type of neglect or abuse, disposition, and date (e.g. substantiated educational neglect dated xx/xx/xx) with check boxes to indicate: 1) whether the decision was upheld, modified or overturned; and 2) the reasons for the decision.  The potential reasons for upholding a decision are: (a) the report disposition was not made in error; (b) the appellant did engage in abuse/neglect acts as defined in the Ohio Revised Code; (c) the disposition is supported by the information presented; and (d) other, with a blank line for a description. EXHIBIT 4.

60.     CCDCFS' appeal decision does not include details of the allegations that led to the issuance of a report, evidence that supported the appeal decision or a standard of proof, such as preponderance of evidence, which was used to reach the decision. This lack of information does not allow the individual to challenge the outcome of the appeal.

61.     CCDCFS' written notice states the appeal decision is final and not subject to state hearing review under Ohio Revised Code § 5101.35. EXHIBIT 4.

62.     However, Ohio Revised Code § 2506.01 allows for the appeal of every "final order, adjudication, or decision" of any department or other division of any political subdivision of the state to the court of common pleas within 30 days of the administrative decision.

63.     Despite the availability of an appeal under Ohio Revised Code § 2506.01, there is no mention of that right in the form letter that CCDCFS sends to document the appeal decision.

### *Eligibility to Work in Child Care*

64.     In Ohio, to own, operate, or be employed in any role by a child care provider licensed by the Ohio Department of Job and Family Services (ODJFS), an individual must request ODJFS perform a search of SACWIS at the time of employment and every five years thereafter. *See* OHIO ADMIN. CODE 5101:2-12-09. This requirement includes roles in which the employee would have no contact with children.

65.     Ohio Revised Code § 5104.013(C)(3) requires that in order for the director of ODJFS to find an individual ineligible for employment in child care, the director must reasonably conclude, within the totality of the circumstances, the individual would directly or indirectly endanger the health, safety, or welfare of children.

66.     However, ODJFS' regulation, Ohio Administrative Code § 5101:2-12-09(G)(3), states a person with any substantiated finding of abuse or neglect within the last ten years is ineligible to work in child care.

67.     When an individual applies for a job with a licensed child care provider, the Ohio Department of Job and Family Services issues an "Individual Notification of Background Check Review for Child Care." This is a form letter with check boxes to indicate the individual either: 1) meets the qualifications for employment or residence at a child care program or 2) does not meet the qualifications for employment or residence in a child care program. The check box options for why an application does not meet the qualifications are: 1) BCI (Ohio's Bureau of Criminal Investigations); 2) FBI; 3) Federal Sex Offender registry; 4) State Sex Offender registry; and 5) Child Abuse and Neglect check (SACWIS). EXHIBIT 5.

68.     For individuals found ineligible to work in child care, the section entitled "Details of findings" on the "Individual Notification of Background Check Review for Child Care"

contains the standard statement, "[y]ou do not meet the qualifications for employment in a child care program or residence in a family child care home at the time of the assessment due to a record of substantiated child abuse or neglect in the previous 10 years listing you as an alleged perpetrator in [SACWIS]", along with a date of the finding, a summary description of the type of abuse or neglect, and the name of the PCSA which made the finding. EXHIBIT 5.

69.     The "Individual Notification of Background Check Review for Child Care" states: "[i]f you believe the information received is not accurate, you may make an application directly with the agency that contributed the questioned information" and the address of an ODJFS web page on child care policies which contains many other links. No contact information for "the agency" which an individual must contact is provided. EXHIBIT 5.

70.     The "Individual Notification of Background Check Review for Child Care" also provides that if the recipient of the letter disagrees with the decision made by ODJFS, they can complete a JFS 01178 "Request for Review of a Background Check Decision for Child Care" form with no information on how to find the document or a deadline to submit it. EXHIBIT 5.

71.     ODJFS has a practice of not offering an opportunity for individuals to be heard regarding their fitness to work in child care.

72.     When Plaintiffs Ms. Williams and T.T. requested review of their ineligibility to work in child care, no hearing was held and both Plaintiffs received a letter stating they were ineligible solely because of their substantiated dispositions of neglect within the last ten years. EXHIBIT 6.

73.     No information was provided on the right to appeal this decision.

74.     Ohio Revised Code § 2506.01 allows for the appeal of every "final order, adjudication, or decision" of any department or other division of any political subdivision of the state to the court of common pleas within 30 days of the administrative decision.

75.     In addition to the provisions of the Ohio Administrative Code governing work in licensed child care facilities, Ohio Revised Code § 5103.0310(A)(2) requires an institution or association that receives or cares for children for two or more consecutive weeks such as residential facilities and youth shelters to request a summary report of a search of SACWIS prior to employing a person or engaging a subcontractor, intern, or volunteer.

76.     Ohio Revised Code § 5103.0310(B) states the institution or association may refuse to hire the person based solely on the results of the child abuse and neglect registry search.

77.     Unlike the ten-year limitation on the inability to work in child care in Ohio Administrative Code § 5101:2-12-09 for individuals with substantiated dispositions, the check of SACWIS for child serving institutions and associations reveals all substantiated and indicated abuse or neglect dispositions ever listed.

78.     Although Ohio Revised Code § 5103.0310(B) allows, rather than requires, child serving institutions and associations to refuse to hire applicants based on their summary SACWIS report, employers regularly deny employment when a substantiated or indicated disposition is found.

## V.     FACTUAL BACKGROUND

79.     Nancy Williams is a 60-year-old African American woman who resides in Cleveland, Ohio.

80.     In 2014, CCDCFS investigated Ms. Williams.

81.     As CCDCFS has refused to disclose the evidence or details of the allegations, the specific allegations are not known.

82.     On May 9, 2014, CCDCFS sent a notice of a substantiated disposition of neglect to Ms. Williams. EXHIBIT 2.

83.     The notice said only that a disposition of "medical neglect" had been made regarding her daughter, it did not describe the alleged actions or evidence which supported the disposition of neglect. EXHIBIT 2.

84.     The notice did not mention any implications of the disposition for current or future employment, or other consequences.  EXHIBIT 2.

85.     The notice Ms. Williams received did not mention a right to appeal the disposition. EXHIBIT 2.

86.     Through a separate judicial process but based only on CCDCFS' representations about the allegations, Ms. Williams' daughter was removed from Ms. Williams care and placed in a foster home.

87.     Ms. Williams' daughter died while living in the foster home.

88.     The judicial case was then dismissed and no final findings were made by the court on the allegations which led to removal.

89.     In 2021, Ms. Williams applied for a job cleaning a child care facility.

90.     On October 20, 2021, ODJFS issued a notice that Ms. Williams was ineligible to work in child care due to a substantiated finding of medical neglect in SACWIS from 2014. EXHIBIT 5.

91.     After losing the opportunity to work cleaning a child care facility, on November 11, 2021, Ms. Williams requested an appeal of the substantiated disposition through CCDCFS.

92.     A meeting was scheduled in early 2022.

93.     CCDCFS canceled the meeting.

94.     Also on November 11, 2021, Ms. Williams requested ODJFS review the decision that she was ineligible to work in child care.

95.     No hearing or meeting was held on the request to ODJFS.

96.     On November 18, 2021, ODJFS issued a decision to uphold the ineligibility to work in child care because it had not been ten years since the substantiated disposition of neglect.  EXHIBIT 6.

97.     In November 2022, Ms. Williams requested to reschedule the meeting with CCDCFS. She did not receive a response to her request. She later made efforts in December 2022 and January 2023 to reschedule the meeting with CCDCFS, but her attempts were unsuccessful.

98.     Due to CCDCFS' substantiated disposition, Ms. Williams will be unable to work in child care until May 2024.

99.     Ms. Williams' disposition of neglect will be reported any time she applies at a youth shelter or residential facility for the rest of her life.

100.    T.T. is a 43-year-old African American woman who resides in Cleveland, Ohio.

101.    In June 2020, CCDCFS investigated T.T., including a visit to her home.

102.    As CCDCFS has refused to disclose the evidence or details of the allegations, the specific allegations related to the disposition are not known.

103.    T.T. received no contact about the case after the initial visit.

16

104. T.T. received no notice that CCDCFS had made a disposition of substantiated neglect against her.

105. No juvenile case was ever filed against T.T. regarding the June 2020 investigation or allegations.

106. T.T. worked in child care for over twelve years.

107. In October 2021, T.T.'s employer submitted a request to ODJFS for a routine five-year background check of SACWIS.

108. On October 20, 2021, ODJFS issued a notice that T.T. was ineligible to work in child care due to the substantiated disposition of medical neglect from June 2020.

109. T.T. lost her job as a direct result of the June 2020 disposition.

110. T.T. requested ODJFS review the decision that ineligible to work in child care.

111. No hearing or meeting on the request occurred.

112. On November 18, 2021, ODJFS issued a decision to uphold the ineligibility to work in child care because the substantiated disposition of neglect was within the last ten years.

113. T.T.  also appealed the disposition itself with CCDCFS.

114. She was given a meeting with CCDCFS by phone.

115. Prior to, and during, the meeting she requested but CCDCFS denied information and evidence about the allegations against her.

116. In December 2021, CCDCFS upheld the disposition of neglect.

117. T.T. is unable to work in child care until June 2030.

118. T.T.'s disposition of neglect will be reported any time she applies at a youth shelter or residential facility for the rest of her life.

119.    Justin Williams is a 30 year-old African American man who resides in Canton, Ohio.

120.    In 2013, Mr. Williams and his roommates were investigated by the Lakewood Police Department related to a minor who visited their apartment.

121.    Mr. Williams was cleared from suspicion of any criminal activity by the statement of the alleged victim and DNA testing.

122.    Mr. Williams was never charged with a crime but some of his roommates were charged and sentenced.

123.    Mr. Williams received no notice of a disposition made by CCDCFS against him.

124.    In 2020, Mr. Williams applied for a job with a youth shelter.

125.    A check of SACWIS revealed he had an indicated disposition for sexual abuse from 2013.

126.    Mr. Williams was denied employment with the youth shelter based on this SACWIS check.

127.    In 2020, Mr. Williams appealed his indicated disposition with CCDCFS.

128.    At the meeting on the appeal, an employee of CCDCFS told Mr. Williams that his disposition would only affect his career with youth for ten years.

129.    On April 14, 2020, CCDCFS upheld Mr. Williams' 2013 indicated disposition.

130.    As Mr. Williams' finding is indicated, a lower level of proof than substantiated, he is eligible to work in child care.

131.    In early 2023, Mr. Williams reached out to CCDCFS to confirm that because ten years had now passed since the disposition, he would again be eligible to work with children in settings like youth shelters and residential facilities.

132.    At that time, a CCDCFS staff person told him that his disposition would remain in SACWIS and be disclosed to youth shelters and residential facilities for life.

133.    Pursuant to the policies and practices described above, none of the Plaintiffs were offered a pre-disposition hearing, given written notice of the specific acts they were alleged to have committed, allowed access to the evidence used against them before or after the disposition, provided review by a neutral decision maker, or allowed to subpoena or cross examine witnesses.

134.    None of the Plaintiffs' disposition appeal decisions applied facts to a standard of proof or provided information about an appeal to common pleas court.

135.    ODJFS' notices of ineligibility to work in child care did not provide adequate information to appeal and the review decision did not allow an opportunity to be heard, a standard of proof, or information about how to appeal.

136.    In February 2023, counsel for Plaintiffs put Defendants on notice of the constitutional violations caused by their current policies and practices via a letter. EXHIBIT 7.

137.    Plaintiffs dispositions and Defendants policies and practices disposition appeals and eligibility to work in child care remain unchanged.

138.    Plaintiffs continue to be prevented from work in child care and child-serving institutions due to Defendants' policies and practices.

## VI.    CLAIMS FOR RELIEF

**COUNT ONE: CIVIL 42 U.S.C. § 1983 ACTION FOR INJUNCTIVE RELIEF**
**Fourteenth Amendment Procedural Due Process Violations**
**in Appeal of Dispositions**
(Against Defendants Cuyahoga County and
Fletcher, and Ronayne, in their official capacities)

139.    Plaintiffs incorporate the preceding paragraphs of this complaint by reference as though fully set forth herein.

140.    Defendants Fletcher and Ronayne are sued in this count in their official capacities.

141.    At all relevant times, Defendants Cuyahoga County, Fletcher, and Ronayne were acting under color of law in the administration of disposition appeals and SACWIS maintenance.

142.    Plaintiffs have a constitutionally protected liberty interest to work in their chosen profession of child care and/or in other child-serving institutions.

143.    Defendants Cuyahoga County, Fletcher, and Ronayne violated Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, by their policies and practices and by virtue of their conduct and actions giving rise to a deprivation of Plaintiffs' liberty interest through one or more of the following constitutional violations:

      *A.* Failing to afford Plaintiffs a timely hearing, including a hearing prior to making a disposition of abuse or neglect;

      *B.* Failing to afford Plaintiffs adequate notice of the allegations against them, including the specific acts constituting neglect and evidence, if any, on which CCDCFS relied in entering dispositions against them;

20

C. Applying Ohio Revised Codes §§ 5101.131, 2151.421(I) and 5153.17 and Ohio Administrative Code § 5101:2-33-21, concerning the confidentiality of child welfare records, in a manner that violates Plaintiffs' rights to procedural due process or, in the alternative enforcing these provisions of law when they violate Plaintiffs' procedural due process rights;

D. Failing to provide adequate hearing procedures to ensure Plaintiffs had an opportunity to defend themselves against the allegations;

E. Failing to provide review of dispositions by a neutral decision maker;

F. Upholding Plaintiffs' dispositions without applying a preponderance of the evidence standard;

G. Failing to provide adequate explanation for the disposition appeal decisions; and

H. Failing to provide adequate information on the opportunity to appeal CCDCFS' disposition appeal decisions.

144. Plaintiffs are suffering irreparable injury as a result of the acts and omissions of Defendants as alleged in this complaint.

145. Plaintiffs are without a plain, speedy and adequate remedy at law.

146. Plaintiffs are living under restriction of their liberty rights due to the dispositions against them. They are prevented from working in their chosen profession of child care and other child-serving institutions.

147. Plaintiffs are entitled to injunctive relief to order Defendants Cuyahoga County, Fletcher and Ronayne to: (a) vacate Plaintiffs' dispositions and (b) remove Plaintiffs' dispositions from SACWIS.

**COUNT TWO: CIVIL 42 U.S.C. § 1983 ACTION FOR DAMAGES**
**Fourteenth Amendment Procedural Due Process Violations**
**in Appeal of Dispositions**

(Against Defendants Cuyahoga County and
Fletcher, and Ronayne, in their official capacities)

148.    Plaintiffs incorporate preceding paragraphs of this complaint by reference as though set forth fully herein.

149.    Defendants Ronayne and Fletcher are sued in this count in their official capacities.

150.    Defendants Ronayne and Fletcher are responsible for the policies and procedures related to an appeal of a disposition of abuse or neglect within the Cuyahoga County Division of Children and Family Services.

151.    Plaintiffs have a constitutionally protected liberty interest to work in their chosen profession of child care and/or in other child-serving institutions.

152.    Defendants Ronayne and Fletcher, and in conjunction with defendant Cuyahoga County acting under its policies, and each of them, acting under color of state law, have subjected Plaintiffs, or have caused Plaintiffs to be subjected, to the deprivation of certain rights, privileges and immunities to which Plaintiffs are entitled under the Fourteenth Amendment to the U.S. Constitution including but not limited to the right to procedural due process of law.

153.    As a direct and proximate result of Defendant Ronayne and Fletcher's unconstitutional policies and procedures Plaintiffs suffered and will continue to suffer economic and non-economic damages for which Defendants Ronayne and Fletcher are liable, including but not limited to loss of income and mental and emotional pain and suffering.

**COUNT THREE: CIVIL 42 U.S.C. § 1983 ACTION FOR INJUNCTIVE RELIEF**
**Fourteenth Amendment Procedural Due Process Violations**
**in Appeal of Dispositions**

(Against Defendant Damschroder, in his official capacity)

154. Plaintiffs incorporate the preceding paragraphs of this complaint by reference as though set forth fully herein.

155. Defendant Damschroder is sued in this count in his official capacity.

156. At all relevant times, Defendant Damschroder was acting under color of law in the regulation of disposition appeals, SACWIS maintenance, and eligibility to work in child care.

157. Plaintiffs have a constitutionally protected liberty interest to work in their chosen profession of child care and/or in other child-serving institutions.

158. Defendant Damschroder violated Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, by enforcing and condoning ODJFS policies, conduct and actions giving rise to a deprivation of the constitutionally protected liberty interest to work in a chosen profession of child care and/or other child-serving institutions through one or more of the following constitutional violations:

    *A.* Failing to require county PCSAs to give Plaintiffs a timely hearing, including a hearing prior to making a disposition of neglect or abuse and entering that disposition in SACWIS;

    *B.* Failing to require county PCSAs to afford Plaintiffs adequate notice of the allegations against them, including the specific acts constituting neglect or abuse, and access to evidence on which a PCSA relies in substantiating the allegations against Plaintiffs;

C.  Failing to require county PCSAs to apply Ohio Revised Code §§ 5101.131, 2151.421(I) and 5153.17 and Ohio Administrative Code § 5101:2-33-21, concerning the confidentiality of child welfare records, in a manner that considers Plaintiffs' rights to procedural due process or, in the alternative enforcing these provisions of law when they violate Plaintiffs' procedural due process rights;

D.  Failing to require county PCSAs to provide adequate hearing procedures to ensure Plaintiffs have an opportunity to defend themselves against the allegations;

E.  Failing to require county PCSAs to provide review of dispositions by a neutral decision maker;

F.  Allowing county PCSAs to uphold Plaintiffs' dispositions without applying a preponderance of the evidence standard;

G.  Failing to require county PCSAs to provide adequate explanation for the disposition appeal decisions; and

H.  Failing to require county PCSAs to provide adequate information on the opportunity to appeal the PCSA's disposition appeal decisions.

159.  Plaintiffs are suffering irreparable injury as a result of the acts and omissions of Defendant Damschroder, and each of them, as alleged in this complaint.

160.  Plaintiffs are without a plain, speedy and adequate remedy at law.

161.  Plaintiffs are living under restriction of their liberty as a result of the dispositions against them. They are prevented from working in their chosen profession of child care and with youth.

162.    Plaintiffs are entitled to injunctive relief from Defendant Damschroder to: (a) remove their dispositions from SACWIS and (b) issue notices that they are eligible to work in child care.

### COUNT FOUR: CIVIL 42 U.S.C. § 1983 ACTION FOR INJUNCTIVE RELIEF

**Fourteenth Amendment Procedural Due Process Violation
in Denying Eligibility to Work in Child Care**

(Against Defendant Damschroder, in his official capacity)

163.    Plaintiffs incorporate the preceding paragraphs of this complaint by reference as though set forth fully herein.

164.    At all relevant times, Defendant Damschroder was acting under color of law in the regulation, enforcement of regulations, and consideration of Plaintiff Nancy Williams and T.T.'s eligibility to work in child care.

165.    Plaintiffs Nancy Williams and T.T. have a constitutionally protected liberty interest to work in their chosen profession of child care.

166.    Defendant Damschroder violated Plaintiff Nancy Williams and T.T.'s rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, to an opportunity to be heard; a preponderance of evidence standard regarding whether they may directly or indirectly endanger the health, safety, or welfare of children; and adequate information on how to appeal the original ineligibility decision and the review decision.

167.    Although the Ohio Revised Code contemplates a broad inquiry into fitness to work in child care after a disposition of abuse or neglect, the Ohio Administrative Code has reduced the inquiry to a time limit.

168.    Ohio Revised Code § 5104.013(C)(3) requires the Director of the Ohio Department of Job and Family Services (Defendant Damschroder) to view the results of a SACWIS check and any information given by a PCSA regarding the persons' fitness to work in child care within the "totality of the circumstances" before determining an applicant or employee is ineligible for employment in child care.

169.    Defendant Damschroder must determine whether the information reasonably leads to the conclusion that the person may directly or indirectly endanger the health, safety, or welfare of children. *See* OHIO REV. CODE ANN. § 5104.013(C)(3) (West 2019).

170.    Only when Defendant Damschroder determines that the information discovered in SACWIS along with information provided by a PCSA regarding fitness of the individual to work in child care reasonably leads to the conclusion that the person may directly or indirectly endanger children may Defendant Damschroder determine an applicant ineligible for employment in a child care center.

171.    Ohio Revised Code § 5104.013 authorizes Ohio Administrative Code § 5101:2-12-09, Background Check Requirements for a Licensed Child Care Center.

172.    Ohio Administrative Code § 5101:2-12-09(G) indicates that an individual is automatically ineligible to be employed in a child care center if identified in SACWIS as the perpetrator of a substantiated disposition of abuse or neglect in the previous ten years from the date the request for background check was submitted.

173.    This administrative code section eliminates the totality of the circumstances test required by the Ohio Revised Code section which authorizes its promulgation.

174.    On October 20, 2021, ODJFS on behalf of Defendant Damschroder issued notices to Plaintiffs Nancy Williams and T.T. stating they were ineligible to work in child care due to a record of substantiated abuse or neglect in the previous ten years.

175.    Defendant Damschroder did not provide an opportunity to be heard or consider a preponderance of evidence standard regarding whether Plaintiffs may directly or indirectly endanger the health, safety, or welfare of children in a child care setting prior to issuing a notice stating Plaintiffs were ineligible to work in child care.

176.    The information on how to request a review of the ineligibility to work in child care was incomplete.

177.    However, Plaintiffs Nancy Williams and T.T. each separately requested review of their eligibility to work in child care.

178.    As part of the review, Defendant Damschroder gave Plaintiffs no opportunity to be heard on the totality of circumstances of whether they posed a direct or indirect danger to the health, safety, or welfare of children in a child care setting.

179.    As part of the review, Defendant Damschroder gave no consideration to the level of evidence needed to sustain a conclusion that Plaintiffs posed a direct or indirect danger to the health, safety, or welfare of children in a child care setting.

180.    On November 18, 2021, ODJFS on behalf of Defendant Damschroder issued decisions affirming Plaintiffs Nancy Williams and T.T.'s ineligibility to work in child care citing only that a substantiated disposition had appeared on each Plaintiffs' record in the previous ten years.

181.    This decision contained no information about the potential for an appeal to common pleas under Ohio Revised Code § 2506.01.

27

182.   As Plaintiffs Nancy Williams and T.T. have been irreparably harmed by Defendant Damschroder's failure to provide an opportunity to be heard, consider evidence under a preponderance of the evidence standard and provide adequate information on appeal rights this court should issue injunctive relief including: 1) an order to Defendant Damschroder to issue notice stating Plaintiffs Nancy Williams and T.T. are eligible to work in child care and 2) declare Ohio Administrative Code § 5101:2-12-09(G) to be invalid because it fails to provide the due process required when considering an individual's liberty interest to work in their chosen profession of child care.

## VII.   INJURIES

183.   As a proximate result of the policies, procedures and conduct of Defendants about which Plaintiffs complain, Plaintiffs have suffered a deprivation of their liberty interest to work in their chosen profession of child care and/or other child-serving institutions.

184.   As a proximate result of the actions and conduct of Defendants about which Plaintiffs complain, and as of the date this Complaint was filed, Plaintiffs have suffered substantial financial and emotional injury.

(a) Due to their dispositions by CCDCFS, Plaintiffs were without consistent, full-time employment, and, as a result, incurred substantial loss of employment income and ancillary benefits.

(i)    Ms. Williams was denied a cleaning position with a child care center in October 2021 and has worked sporadically since that time, making substantially less than she would have at her child care job.

    (ii)     T.T. was fired from her child care job in October 2021 and has worked sporadically since that time, making substantially less than at her child care job.

    (iii)    Mr. Williams learned in early 2023 that his disposition would appear in background checks for child serving institutions for the rest of his life. He has worked sporadically and made substantially less than he would have made in a job with a child-serving institution since the disposition was entered against him.

(b) Plaintiffs have experienced emotional pain and suffering. Among other things, they experienced shame and humiliation for the time during which the dispositions stand against them. They have also experienced feelings of isolation, depression, loss of status in their profession, and a substantial loss of self-esteem.

(c) Plaintiffs have incurred, and will continue to incur, reasonable attorneys' fees and costs in bringing and maintaining this action, and Plaintiffs are entitled to such fees and costs pursuant to 42 U.S.C. § 1988(b).

(d) The injuries to Plaintiffs and the violations of Plaintiffs' constitutional rights stemming from the acts and omissions of Defendants, as alleged herein, are continuous and ongoing.

## VIII.   **PRAYER FOR RELIEF**

185.    WHEREFORE, Plaintiffs pray for relief as follows:

    1.   Declare that the policies, procedures, statutes and regulations described herein that result in a lack of due process are violative of the Due Process Clause of

the Fourteenth Amendment to the United States Constitution, both facially and as applied to the individual named Plaintiffs, and to find that these policies, procedures, statutes and regulations are unconstitutional, invalid, and illegal.

2. For an injunction, ordering:

   a. Defendants Cuyahoga County, Fletcher and Ronayne to vacate Plaintiffs' dispositions;

   b. Defendants Cuyahoga County, Fletcher, Ronayne and/or Defendant Damschroder to remove Plaintiffs' dispositions from SACWIS;

   c. Defendant Damschroder to issue notice that Plaintiffs Nancy Williams and T.T. are eligible to work in child care;

   d. Defendant Damschroder to refrain from disclosing Plaintiffs' dispositions in any requests for information from SACWIS;

   e. Defendants Cuyahoga County, Fletcher, and Ronayne to adopt a new policy requiring adequate due process procedures pre and post-disposition of neglect or abuse;

   f. Defendants Cuyahoga County, Fletcher, and Ronayne to notify individuals with substantiated or indicated dispositions of abuse or neglect by CCDCFS in the last ten years of the new policy and provide an opportunity to challenge dispositions;

   g. Defendant Damschroder to cause ODJFS to adopt a new regulation requiring counties to adopt adequate due process procedures pre and post-disposition;

      h.   Defendant Damschroder to require PCSAs to notify individuals with substantiated or indicated dispositions of abuse or neglect in the last ten years of the PCSA's new policy on disposition appeals and provide an opportunity to challenge dispositions;

      i.   Defendant Damschroder to cause ODJFS to adopt a new regulation providing due process in the consideration of eligibility to work in child care aligning with the totality of circumstances consideration in Ohio Revised Code § 5104.013(C)(3); and

      j.   Defendant Damschroder to notify individuals with substantiated dispositions of abuse or neglect within the last ten years of the new regulation for considering eligibility to work in child care and provide an opportunity to use the new procedures to seek eligibility to work in child care.

3. For general, special and compensatory damages according to proof from Defendants Cuyahoga County, Fletcher and Ronayne;

4. For reasonable attorneys' fees;

5. For costs of suit; and

6. For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Danielle Gadomski Littleton (0087704)
Jennifer Kinsley Smith (0090769)
Eric Zell (0084318)
The Legal Aid Society of Cleveland
1223 West Sixth Street
Cleveland, Ohio 44113
Ph. (216) 861-5767 – DGL
Ph. (216) 861-5443 – JKS
Ph. (216) 861-5202 - EZ
Fax (216) 861-0704
dglittleton@lasclev.org
jsmith@lasclev.org
ezell@lasclev.org
***Counsel for Plaintiffs***

**JURY DEMAND**

Plaintiff hereby demands a trial by the maximum number of jurors permitted by law as to all issues in this action.

Danielle Gadomski Littleton (0087704)