# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JUSTIN WILLIAMS, | ) | Case No. 1:23-cv-1879 |
| | ) | |
| and | ) | Judge J. Philip Calabrese |
| | ) | |
| TIARA THOMAS, | ) | Magistrate Judge |
| | ) | Jennifer Dowdell Armstrong |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CUYAHOGA COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiffs Justin Williams and Tiara Thomas filed suit challenging Ohio's administrative process for dispositions of child abuse or neglect that have the effect of preventing a person from working in or around childcare for ten years.  Plaintiffs allege that Cuyahoga County, certain of its officials, and the Director of the Ohio Department of Job and Family Services violated their rights under the Fourteenth Amendment's Due Process Clause through the processes by which Defendants determined that they were responsible for abuse or neglect that barred employment.  Specifically, they contend that Ohio law and administrative practice deprive them of a protected liberty interest without adequate notice, a pre-deprivation hearing, and post-deprivation procedures that do not meet the minimum requirements of due process.  Defendants move to dismiss the complaint.  For the reasons that follow, the

Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss for failure to state a claim.

### FACTUAL AND PROCEDURAL BACKGROUND

This action arises from separate child abuse or neglect investigations, during or after which each Plaintiff alleges that Defendants violated their right to Due Process. Plaintiffs challenge both the administrative appeals process and the effect of child abuse and neglect findings on their right to work in childcare or facilities that provide childcare.

### A.    Background Ohio Law and Administrative Regime

Chapter 5104 of the Ohio Revised Code governs childcare centers. State law defines a "child care center" as "any place that is not the permanent residence of the licensee or administrator in which child care or publicly funded child care is provided for seven or more children at one time." Ohio Rev. Code § 5104.01(L). Under Ohio law, childcare includes care for infants to school age children, outside school hours by persons other than parents, guardians, or custodians, outside the home. *Id.* § 5104.01(K). The Ohio Department of Jobs and Family Services licenses certain in-home childcare providers, called type A and type B family childcare homes. *Id.* §§ 5104.01(DD), (UU) & (VV). Type A and type B providers are distinguished by how many children they may have in their care. Generally, type B providers may only care for up to six children at one time. *Id.* This type of childcare may operate without a license, and only requires a State license if the center provides publicly funded childcare. *See id.* § 5104.31(A) (listing who may provide publicly funded childcare); *see also id.* § 5104.02(B) (listing exemptions from State licensing requirements).

Employees of licensed childcare providers must undergo certain background checks. *See generally* Ohio Rev. Code § 5104.013. At issue in this case, State law mandates: "the director of job and family services shall search the uniform statewide automated child welfare information system for information concerning any abuse or neglect report" by employees or job applicants, among others. *Id.* § 5104.013(C)(1)(f); *see also* Ohio Admin. Code § 5101:2-12-09(B).

If a search of the uniform statewide automated child welfare information system identifies a person "as the perpetrator for a substantiated finding of child abuse or neglect in the previous ten years," then the State makes that person ineligible for employment at a licensed childcare provider. Ohio Admin. Code § 5101:2-12-09(G)(3); *see also id.* § 5101:2-13-09(G)(3) (similar rule for family child care providers).

### A.1. Child Abuse and Neglect Investigations

In this regime, the Ohio Department of Jobs and Family Services does not itself make findings regarding child abuse and neglect. Instead, public children services agencies investigate and make dispositions related to alleged child abuse and neglect based on reports from mandatory reporters and the general public. Ohio Rev. Code § 2151.421; Ohio Admin. Code §§ 5101:2-36-01 & 5101:2-36-03(V) & (AA). These agencies include a county department of job and family services or a county children services board. Ohio Rev. Code § 5153.02.

When a public children services agency closes an investigation, it makes a disposition finding whether the allegation of abuse or neglect is substantiated, indicated, unsubstantiated, or unable to be completed for various reasons. Ohio

Admin. Code § 5101:2-1-1(B)(46).  A substantiated report covers "an admission of child abuse or neglect by the person(s) responsible; an adjudication of child abuse or neglect in court; or other forms of confirmation deemed valid by the [public children services agency]."  *Id.* § 5101:2-1-01(B)(313).  An indicated report means that "there [are] circumstantial or other isolated indicators of child abuse or neglect lacking confirmation; or a determination by the caseworker that the child may have been abused or neglected based upon completion of an assessment/investigation."  *Id.* § 5101:2-1-01(B)(161). An unsubstantiated report means that "the assessment/ investigation determined no occurrence of child abuse or neglect."  *Id.* § 5101:2-1-01(B)(344).

During a public children services agency's investigation, an individual suspected of abuse or neglect does not have a right to counsel.  (ECF No. 1, ¶ 26, PageID #5.) According to Plaintiffs, individuals are "not provided a written statement of the specific acts which are alleged to constitute abuse or neglect, given the opportunity to inspect the evidence against them, nor informed of the identity of the person who made the allegations or a right to know about the specific facts creating the basis for the allegations."  (*Id.*, ¶ 25.)  Under Ohio law, the definitions of abuse and neglect do not include a standard of proof for administrative dispositions.  *See* Ohio Rev. Code § 2151.03 & 2151.031; *see also* Ohio Admin. Code § 5101:2-33-20.  In court, Ohio law demands proof of abuse or neglect by clear and convincing evidence.  *Id.*, § 2151.35(A)(1).

Within two working days of completing an investigation, the public children services agency shall "[n]otify the alleged perpetrator in writing of the report disposition; the right to appeal; and the method by which the alleged perpetrator may appeal the disposition." Ohio Admin. Code § 5101:2-36-03(AA)(2). Additionally, it enters the disposition into the statewide automated child welfare information system. *Id.* § 5101:2-33-70(G).

### A.2. Cuyahoga County Appeals Process

Ohio law allows for the appeal of every "final order, adjudication, or decision" of any department or agency of a political subdivision to a court of common pleas within thirty days of the decision. Ohio Rev. Code § 2506.01(A). The State provides rules for counties to use when developing policies for individuals to dispute a disposition of abuse or neglect. *See* Ohio Admin. Code § 5101:2-33-20. Each county must develop and implement a written policy for resolving an appeal "by alleged perpetrators who disagree with" the disposition. *Id.* § 5101:2:-33-20(A)(2). State regulations broadly identify the types of information for such policies without mandating specifics. *Id.* § 5101:2-33-20(B). But they do require a public children services agency to "provide written copies of the [agency's] complaint review and report disposition appeal policies." *Id.* § 5101:2-33-20(C). Additionally, the outcome of the appeal must be updated in the statewide automated child welfare information system. *Id.* § 5101:2-33-20(I).

In Cuyahoga County, the public children services agency is the Cuyahoga County Department of Child and Family Services. Pursuant to Section 5101.2:33-20(A)(2) of the Ohio Administrative Code, the Department issued a policy for appeals

5

of dispositions of abuse or neglect.  (ECF No. 1-1.)  Under the policy, the Department mails a written notice called a disposition letter notifying the alleged perpetrator of "the outcome of the investigation and [his or her] right to appeal."  (*Id.*, PageID #34.) That person then has thirty days in which to appeal a disposition of indicated or substantiated allegations of abuse or neglect.  (*Id.*, PageID #35.)

### A.3.   Working in a Childcare Setting

Under Ohio law, any prospective employer, owner, or operator of a licensed childcare provider must request the Ohio Department of Job and Family Services to perform a search of the statewide automated child welfare information system when an employee begins employment and in five-year intervals after that.  Ohio Rev. Code § 5104.013(C)(2); Ohio Admin. Code § 5101:2-12-09.  Similarly, any organization or agency that cares for children, such as a residential facility or youth shelter, must request a summary report from the system before employing or engaging any new employee, intern, or volunteer.  Ohio Rev. Code § 5103.0310(A)(2).

Under State law, the Director of the agency shall search the statewide automated child welfare information system and determine whether that "information, when viewed within the totality of the circumstances, reasonably leads to the conclusion that the person may directly or indirectly endanger the health, safety, or welfare of children."   Ohio  Rev.  Code  § 5104.013(C)(3).   The agency's regulations make a person who receives a substantiated finding of abuse or neglect in the previous ten years ineligible to work in a childcare center.  *Id.* § 5101:2-12-09(G)(3).

6

Notwithstanding this time period after a substantiated disposition, the statewide automated child welfare information system retains disposition information indefinitely. (ECF No. 1, ¶ 77, PageID #14.) Further, an organization or agency that cares for children may refuse to hire a person or accept a volunteer or intern "based solely on the results of the search" of the statewide automated child welfare information system. Ohio Rev. Code § 5103.0310(D).

## B.    The Plaintiffs

On Defendants' motion to dismiss, the pleadings establish the following facts, which the Court construes in the light most favorable to Plaintiffs, as it must in the current procedural posture.

### B.1.    Tiara Thomas

Plaintiff Tiara Thomas worked in childcare for more than twelve years. (*Id.*, ¶ 106, PageID #17.) In June 2020, the Cuyahoga County Department of Child and Family Services investigated Ms. Thomas, including a visit to her home. (*Id.*, ¶ 101.) After this visit, Ms. Thomas received no contact or notice about the allegations. (*Id.*, ¶¶ 103–05, PageID #16–17.) In October 2021, Ms. Thomas's employer submitted a routine five-year background check request. (*Id.*, ¶ 107, PageID #17.) In response, the Ohio Department of Job and Family Services issued a notice dated October 20, 2021 that Ms. Thomas is ineligible to work in childcare due to a substantiated disposition of medical neglect in June 2020. (*Id.*, ¶ 108.) As a result, Ms. Thomas lost her job. (*Id.*, ¶ 109.) Ms. Thomas requested that the Ohio Department of Job and Family Services review its eligibility determination, and the agency upheld the decision on November 18, 2021. (*Id.*, ¶¶ 110–12.) Also, she appealed the disposition

within the Cuyahoga County Department of Child and Family Services.  (*Id.*, ¶ 113.)
Following a hearing by phone, during which Ms. Thomas requested but was not given
information about the allegations against her, the agency upheld its disposition of
neglect.  (*Id.*, ¶¶ 114–16.)

### B.2.  Justin Williams

In 2013, local police investigated Plaintiff Justin Williams and his roommates
based on allegations of improper conduct with a minor who visited their apartment.
(*Id.*, ¶ 120, PageID #18.)   The victim's statement and DNA testing cleared
Mr. Williams of criminal activity, and he was not charged with a crime, though some
of his roommates were.  (*Id.*, ¶ 121–22.)

Seven years later, Mr. Williams applied for a job with a youth shelter.  (*Id.*,
¶ 124.)   When the employer checked the statewide automated child welfare
information system, it denied Mr. Williams employment on the basis that he had an
indicated disposition of child sexual abuse in 2013.  (*Id.*, ¶ 125–26.)  Mr. Williams
received no notice of any such disposition.  (*Id.*, ¶ 123.)

Mr. Williams appealed with the Cuyahoga County Department of Child and
Family Services.  (*Id.*, ¶ 127.)  During an appeal meeting, an employee with the
County agency informed Mr. Williams, incorrectly, that the disposition "would only
affect his career with youth for ten years."  (*Id.*, ¶ 128.)  On April 14, 2020, the agency
upheld the indicated disposition.  (*Id.*, ¶ 129.)  In early 2023, Mr. Williams contacted
the County agency to confirm that he was now eligible to work with children in youth
shelters and residential facilities.  (*Id.*, ¶ 131.)  Then, agency staff told him for the

8

first time that the disposition would remain in the statewide automated child welfare information system for life.  (*Id.*, ¶ 132, PageID #19.)

## STATEMENT OF THE CASE

On September 26, 2023, Plaintiffs filed a complaint against four individuals and entities: (1) Cuyahoga County, (2) Jacqueline Fletcher in her official capacity as Director of the Cuyahoga County Division of Children and Family, (3) Chris Ronayne in his official capacity as County Executive of Cuyahoga County, and (4) Matt Damschroder in his official capacity as the Director of the Ohio Department of Job and Family Services.  (ECF No. 1.)  Plaintiffs allege procedural due process violations under the Fourteenth Amendment, stemming from Defendant's denial of Plaintiffs' eligibility to work in childcare and their appeals of the dispositions.  Plaintiffs seek damages and injunctive relief.  (*Id.*, PageID #29–31.)

Arguing that Plaintiffs have no protected liberty interest and are procedurally time barred, Defendants move to dismiss the complaint.  Also, Defendants object to the naming of two individual Defendants in their official capacities as redundant. Finally, they assert that one type of relief that Plaintiffs request is not cognizable in federal court.

Initially, a third Plaintiff, Nancy Williams, filed suit as well.  (ECF No. 1.) However, she advised her lawyers that she wished to dismiss her claims.  (ECF No. 40.)  Following a hearing, the Court did so.  (*Id.*, PageID #371.)

9

## ANALYSIS

In any civil action, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555, 557 n.5.

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the plaintiff, accepts the factual allegations of the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). In reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which it must treat as true, and "naked assertions," which it need not treat as true. *Iqbal*, 556 U.S. at 628. The Court will also not accept as true "[c]onclusory allegations or legal conclusions masquerading as factual allegations . . . ." *Edison v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

10

On a motion under Rule 12(b)(6), the Court limits its inquiry to the content of the complaint, although it may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" or "to a motion to dismiss" as long those exhibits are referenced in the complaint and central to the claims. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001); *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## I.  Due Process

Analysis of Plaintiffs' claims presents something of a puzzle in light of the labyrinthine jurisprudence that has grown up around Section 1 of the Fourteenth Amendment.  In addition, the parties complicate matters further.  Plaintiffs plead general claims under Section 1983 alleging violations of the Fourteenth Amendment's command that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend XIV, § 1.  The County Defendants move to dismiss arguing that the so-called "stigma plus" framework applies and that Plaintiffs failed to plead under it.  At oral argument, Plaintiffs agreed that this framework applies.  But the Director of the Ohio Department of Job and Family Services does not and argues more generally that Plaintiffs fail to identify a protected liberty interest.  The Court begins with the "stigma plus" analysis before turning to Director Damschroder's argument.  In doing so, the Court assumes without deciding that each presents an appropriate mode of analysis for a claim under the Fourteenth Amendment.

11

### I.A.  "Stigma Plus"

"The stigma-plus test is used to analyze a due process claim where the action taken by the state injures the plaintiff's reputation." *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)).  But the stigma of reputational harm by itself is not enough does not amount to protected liberty or property under the Fourteenth Amendment. *Paul*, 424 at 701. Instead, a viable claim must rest on a more tangible interest (the "plus"), such as employment. *Id.*  "[I]t is not entirely clear what the 'plus' is." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).  But courts explain it this way: "'[s]tigma plus' refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' [e.g., the loss of government employment] or property right (the plus), without adequate process." *Printup v. Director, Ohio Dep't of Job & Fam. Servs.*, 654 F. App'x 781, 785 (6th Cir. 2016) (cleaned up).

### I.A.1. Falsity

Within the sigma-plus framework, the parties disagree whether the stigma or reputational harm requires an element of falsity.  In other words, a plaintiff who claims stigma as a protected liberty or property interest cannot, as a matter of law, have suffered harm if the facts giving rise to the stigma are true.  (ECF No. 28, PageID #263; ECF No. 31, PageID #315.)  To make this argument, Defendants rely on cases originating in the employment context. *See, e.g.*, *Hasanaj v. Detroit Pub. Sch. Cmty. Dist.*, 35 F.4th 437, 454 (6th Cir. 2022); *Crosby v. University of Ky.*, 863 F.3d 545, 555 (6th Cir. 2017).  This line of case law sets out a five-factor test, which includes a falsity requirement, to determine whether a plaintiff was deprived of a

liberty interest and is entitled to a name-clearing hearing. *See, e.g.*, *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002).

But Defendants cite no authority extending this requirement beyond the public employment context. To try to do so, they rely on *Hart v. Hillsdale County, Michigan*, 973 F.3d 627 (6th Cir. 2020). But *Hart* shows why a falsity requirement does not apply in this case. There, Michigan changed its sex offender registration requirements, relieving the plaintiff of the obligation to register. Nonetheless, the police failed to update their database to reflect the change in the law and arrested the plaintiff on several occasions for failing to register. Among other claims, the plaintiff brought a Section 1983 claim for defamation under the Fourteenth Amendment, which the Sixth Circuit analyzed under the stigma-plus framework. In that framework, the court recognized that the plaintiff factually committed certain offenses or acts but was not a sex offender covered by Michigan's registration requirements. *Id.* at 644. Although in some sense true, the plaintiff still suffered stigmatizing harm in the form of arrests through improper inclusion in the registry. Similarly, Plaintiffs here claim not a mistake of fact or actual innocence but a designation or inclusion in a database that subjects them to stigma and, ultimately, harm that infringes protected liberty or property interests—all without the opportunity to challenge whether the conduct at issue makes the designation appropriate.

At bottom, "the stigma-plus test is used to analyze a due process claim where the action taken by the state *injures the plaintiff's reputation.*" *Id.*, at 501 (emphasis

added).  *Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 501 (6th Cir. 2007) (emphasis added).  The Sixth Circuit does not require falsity for claims of the sort Plaintiffs bring here.  And the Court declines to read such a requirement into the Fourteenth Amendment in the first instance.  Even if the law requires an element of falsity, and the Court thinks it does not, Plaintiffs allege that they are unable to plead falsity because they are not privy to the allegations against them that underlie the administrative dispositions at issue.  (ECF No. 28, PageID #265.)  Fair enough.  If required to establish falsity as an element, a plaintiff's claims would necessarily fail at the outset where, as here, the government—for good reason—keeps the basis for its action secret.  That fact does not close the doors of the courthouse to those who allege harm at the hands of their government.

### I.A.2. Tangible Injury

Plaintiff Tiara Thomas alleges that after working in childcare for over twelve years, the Cuyahoga County Department of Child and Family Services made a disposition of substantiated neglect against her.  (ECF No. 1, PageID #: 17.)  That disposition was entered into the Statewide Automated Child Welfare Information System, the case management system for Ohio's public children services agencies and Ohio's child abuse and neglect registry, which Plaintiffs allege certain employers check before and at appointed times during employment.  (*Id.*, ¶ 37, PageID #7.)  She claims that she is unable to work in childcare until 2030 and that the disposition will be reported any time she applies to work at a youth shelter or residential facility for the rest of her life.  (*Id.*, PageID #: 17.)  Plaintiff Justin Williams discovered that he has an indicated disposition for sexual abuse after the Statewide Automated Child

Welfare Information System was checked.  (*Id.*, ¶ 125, PageID #18.)  In 2023, he learned that this disposition will be disclosed to youth shelters and residential facilities for life.  (*Id.*, ¶ 132, PageID #19.)  Without question, a label of child neglect or child sexual abuse carries stigma.

As for the "plus," Ms. Thomas alleges that she worked in childcare for over twelve years, lost her job as a result of the disposition, is barred from working in childcare until 2030, and the disposition will be reported anytime she applies to a youth shelter or residential facility.  (ECF No. 1, PageID #17.)  With respect to Mr. Williams, his disposition resulted in being turned down for a job in a youth shelter.  (*Id.*, ¶ 125–26, PageID #18.)  These allegations plead more than just reputational harm and state a claim under the stigma-plus framework.

Defendants argue that Mr. Williams fails to claim that he is foreclosed from working in his chosen profession altogether.  (ECF No. 22, PageID #195.)  Further, because his disposition is indicated, not substantiated, Defendants point out that he is not barred from working in childcare.  (*Id.*, PageID #197.)  They maintain that a viable claim requires a complete bar to work in a profession, not just a charge that makes him less attractive as a potential employee.  (*Id.*, PageID #196.)  But the text of the Fourteenth Amendment does not require the complete deprivation of a chosen profession.  Nor does the judicial gloss of the stigma-plus framework.  It asks a plaintiff to plead and prove some deprivation of some liberty or property interested recognized under State or federal law or alter a plaintiff's legal status under a State's laws.  *Paul*, 424 U.S. at 712.  Plaintiff's allegations state a claim under this standard.

15

In this respect, the Court agrees with those courts concluding that placement in a database or registry of suspected child abuse or neglect implicates an interest that the Fourteenth Amendment protects. *See e.g. Humphries v. County of Los Angeles*, 554 F.3d 1170, 1179 (9th Cir. 2009) (holding that inclusion in a child abuse database alters an individual's rights or status because such databases "play[] an integral role in obtaining many rights under California law, including . . . licenses, volunteer opportunities, and even child custody"); *Dupuy v. Samuels*, 397 F.3d 493, 511 (7th Cir. 2005) (holding that one's name in a central database of child abuse or neglect works a significant impediment to obtaining a position in the entire field of child care); *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994) (holding that a tangible burden on employment prospects results from inclusion in a registry of suspected child abusers, amounting to a "plus"); *Finch v. New York State Off. of Child. & Fam. Servs.*, 499 F. Supp. 2d 521, 534 (S.D.N.Y. 2007) (explaining that the State's action in listing subjects in a child abuse registry impairs a protected liberty interest); *see also Thomas Buckner,*  No. 2:11-cv-245-WKW, 2012 WL 3978671, at *7 (M.D. Ala. Sept. 11, 2012) (same); *D.W. ex rel. Wright v. O'Day*, No. 2:11:0064, 2013 WL 3283484, at *6-7 (M.D. Tenn. June 28, 2013) (holding placement on a child abuse registry is a lifelong scarlet letter that implicates a liberty interest).

### I.B.   Liberty Interest

Turning to Director Damschroder's argument based on the more conventional, but no less tortured, jurisprudence on a person's liberty interest, Plaintiffs allege that inclusion in the uniform statewide automated child welfare information system infringes their interest in pursuing the occupations of their choice.  Liberty as

16

understood under the Fourteenth Amendment's Due Process Clause "has long included occupational liberty—'the liberty to follow a trade, profession, or other calling.'" *Wroblewski v. Washburn*, 965 F.2d 452, 455 (7th Cir. 1992) (citations omitted); *see also Bowler v. Mt. Sterling*, 44 F. App'x 670, 674–75 (6th Cir. 2002). When the State makes it "virtually impossible for the [individual] to find new employment in his chosen field, the government has infringed upon that individual's liberty interest to pursue the occupation of his choice." *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 617 (7th Cir. 2002) (quotation omitted); *see also Kohus v. Ohio State Highway Patrol*, No. 1:09-cv-658, 2011 WL 1234021, at *11 (S.D. Ohio Feb. 15, 2011), *report and recommendation adopted*, No. 1:09-cv-658, 2011 WL 1187836 (S.D. Ohio Mar. 29, 2011); *Helm v. Eells*, No. 3:14-cv-00654-TBR, 2015 WL 1778367 (W.D. Ky. Apr. 20, 2015), *aff'd*, 642 F. App'x 558 (6th Cir. 2016).

Director Damschroder contends, as a matter of law, Plaintiffs have suffered no deprivation of this liberty interest because they can still work in childcare in general and that Mr. Williams cannot show that childcare is his chosen field of employment. (ECF No. 22, PageID #190–92.) Mr. Williams alleges that he is unable to work with youth in shelters or residential facilities because of the indicated disposition he received. (ECF No. 1, ¶ 12, PageID #4.) Mr. Williams has alleged an inability to pursue employment in a chosen field, not just a particular job or role, but a field. At the pleading stage, this allegation suffices. As for Ms. Thomas, Director Damschroder does not argue that she has failed to state a claim for deprivation of a protected liberty interest. (*Id.*, PageID #192.) And for good reason. Ms. Thomas pleads that she is

"unable to work in child care because of a substantiated disposition of medical neglect." (ECF No. 1, ¶ 11, PageID #3.) At the pleading stage, she has alleged a liberty interest in employment in childcare, from which she alleges she is barred through this disposition.

One final note. None of this is to say that the State does not have a legitimate interest, even a compelling interest, in taking steps to keep known or suspected child abusers away from children. But the Fourteenth Amendment operates as a limit on State power. No State shall abridge the privileges or immunities of citizens. No State shall deprive any person of liberty or property without due process. These limitations do not invite policymaking through judicial interest balancing—for obvious historical reasons that motivated the Fourteenth Amendment's ratifiers and reinforce the text and its original public meaning.

### I.C. Procedural Protections

Once the existence of some property or liberty interest is established, the question becomes what process is due. At bottom, due process requires notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Due process requires that when a State seeks to terminate a protected interest, it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 729 (6th Cir. 2011) (quoting *Bell v. Burson*, 402 U.S. 535, 542 (1971)).

A few preliminary matters at the outset. *First*, Plaintiffs argue that Defendants cannot cite or describe the Cuyahoga County Department of Child and

Family Services policy at issue (Policy No. 2.03.03) because it falls outside the materials that can be considered on a motion to dismiss.  (ECF No. 28, PageID #273; ECF No. 20-2.)  However, the policy is a public record and central to the allegations of the complaint; therefore, the Court may and does consider it without converting the motion to dismiss to one for summary judgment.  *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2021).

*Second*, in their reply, Defendants argue that Plaintiffs present a "newly disclosed *Parratt* claim" in their response to the motion to dismiss.  (ECF No. 31, PageID #321.)  In *Parratt v. Taylor*, 451 U.S. 527, 543–44 (1981), the Supreme Court recognized that, where a State provides adequate post-deprivation remedies, even a public employee's random and unauthorized deprivation of liberty and property does not violate due process.  *See, e.g.*, *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 901 (6th Cir. 2014) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).  But nothing in Plaintiffs' argument suggests that they proceed under *Parratt*—indeed, they do not even cite the case.  Instead, they question whether Defendants followed their own policies.  (ECF No. 28, PageID #277.)  Accordingly, the Court views Plaintiffs as distinguishing between their facial challenge to the policy as written and their as-applied challenge to application of the policy to each of them.

*Third*, Plaintiffs bring claims both facially and as applied to the individual named Plaintiffs (ECF No. 1, PageID #30).  A facially unconstitutional law is "incapable of any valid application."  *Steffel v. Thompson*, 415 U.S. 452, 474 (1974).  A facial attack is an effort "to invalidate the law in each of its applications" and, in

19

effect, to "take the law off the books completely." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc). A facial challenge is "the most difficult challenge to mount successfully," because a plaintiff must carry a "heavy burden" to "establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The Court cannot say that no set of circumstances exist under which application the laws and policies at issue would be valid. Accordingly, the Court proceeds only with Plaintiffs' as-applied challenge.

### I.C.1. Process Afforded to Plaintiffs

"Procedural due process 'generally requires that the state provide a person with notice and an opportunity to be heard *before* depriving that person of a property or liberty interest.'" *Patel v. Glenn*, No. 21-3499, 2022 WL 16647974, at *5 (6th Cir. Nov. 3, 2022) (citing *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005)). In most cases, "when a deprivation occurs through an established state procedure, then it is both practicable and feasible for the state to provide pre-deprivation process, and the state must do so regardless of the adequacy of any post-deprivation remedy." *Johnson v. City of Saginaw, Mich.*, 980 F.3d 497, 508 (6th Cir. 2020) (cleaned up).

### I.C.1.a. Pre-Deprivation Process

Defendants argue that Policy No. 2.03.03 of the Cuyahoga County Department of Child and Family Services and Ohio law, Ohio Admin. Code § 5101:2-36-03 (now Section 5180:2-36-03), provide adequate pre-deprivation safeguards and process. (ECF No. 22, PageID #198.) They explain that a child protection specialist investigates reported abuse or neglect. (*Id.*, PageID #199.) Within hours of the report of abuse or neglect, the specialist talks to the alleged perpetrator, either in person or

20

on the phone, advising him or her of the specific complaint, allegations, or concerns made against the person. (*Id.*) "[B]ecause the contact with the alleged perpetrator occurs within hours of the abuse/neglect report, the *only evidence* CCDCFS has in its possession *are the allegations*, which are fully disclosed." (*Id.*)

The Ohio Administrative Code provides that the agency will conduct and document face-to-face interviews with the alleged perpetrator, Ohio Admin. Code § 5180:2-36-03(P), but there is no other pre-deprivation process afforded to the alleged perpetrator. Defendants argue that the interview or possible interviews provide alleged perpetrators "with a full and unobstructed opportunity to present their side of the story and identify and provide corroborating witnesses or evidence." (ECF No. 22, PageID #199.) This pre-deprivation process, Defendants argue, meets the constitutional requirements under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

But the policy and the rule are silent about notice of the potential dispositions and their potential consequences as a part of any pre-deprivation process. Discovery might show that notice and process in practice are adequate in many cases, which defeats Plaintiffs' facial attack. But at the pleading stage, the pre-deprivation process allegedly failed to provide Ms. Thomas or Mr. Williams adequate notice or opportunity to be heard before a disposition. As applied to Ms. Thomas and Mr. Williams, the record leaves questions about the adequacy of the process, including whether in their cases that process required a more formal hearing.

## I.C.1.b. Post-Deprivation Process

At the same time, "pre- and postdeprivation processes should be considered together as a single package." *Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015). Therefore, the Court considers the post-deprivation processes available to Plaintiffs when evaluating the procedural protections afforded to Plaintiffs.

Defendants argue that administrative appeal and judicial review under Section 2506.01 of the Ohio Revised Code provide adequate post-deprivation process that cure any alleged deprivation of a liberty interest. (ECF No. 22, PageID #207.) An alleged perpetrator is entitled to an administrative appeal after an "indicated" or "substantiated" disposition is issued. This appeal is "an informal meeting to permit you an opportunity to present information you deem relevant concerning the indicated or substantiated report finding." (ECF No. 1-3, PageID #45.) While witnesses can be brought, witnesses cannot be subpoenaed, and cross-examination is not permitted. (*Id.*) The appeal is conducted by a senior supervisor or administrator at the Cuyahoga County Department of Child and Family Services. (*Id.*, at 44.) Further, given the nature of the proceedings, certain guidelines apply to this appeal:

1. Due to the confidentiality of the information which may be discussed, the Hearing Panel Chair may require the alleged perpetrator to complete a release form permitting others to hear the information about the AP.

2. The AP and /or representative are provided a reasonable amount of time to present new information, which could include documents he or she deems relevant to assist the review panel in understanding the circumstances at the time of the incident or investigation.

3. The AP and/or representative are expected to present their information in a respectful and non-adversarial manner.

22

    4.     The hearing panel may ask questions or request additional clarification regarding their understanding of the circumstances as outlined by the AP.

(ECF No. 1-3, PageID #37.)  Following the decision on the appeal, the decision is final and not subject to state hearing review under Section 5101.35 of the Ohio Revised Code, which governs certain State agency appeals.  (*Id.*, PageID #38.)  Plaintiffs assert that the Cuyahoga County Department of Child and Family Services conducts the administrative appeal more as a meeting than a hearing.  (ECF No. 28, PageID #278.)

Defendants largely pin their argument on Section 2506.01 of the Ohio Revised Code.  This statute provides for judicial review of "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state" in "the court of common pleas of the county in which the principal office of the political subdivision is located." Ohio Rev. Code § 2506.01(A).  In *Kyser v. Summit County Children Services*, 175 Ohio St. 3d 392, 2024-Ohio-2898, 243 N.E.3d 65, ¶ 14, decided after briefing and argument, the Ohio Supreme Court held that a public children-services agency's disposition is not a final order that can be appealed under this statute.  Accordingly, the only post-deprivation relief available is the informal appeal set out in the informal agency policy for appeals.  While that policy might be adequate in many or most cases, at this stage of the proceedings, the limitations attending that process, such as the inability of a person to cross-examination witnesses, presents questions that require resolution with the benefit of a more complete record.

23

### I.C.2. *Eldridge* Factors

When deciding the process due, the Court must balance three factors:  (1) the private interest that will be affected by the official action; (2) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail; and (3) the risk of an erroneous deprivation of such interest through the procedures used, and probable value if any, of additional procedural safeguards.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, Plaintiffs have an interest affecting their professions and their reputations in remaining out of the uniform statewide automated child welfare information system based on false, erroneous, or unreliable determinations that they committed child abuse or neglect.

Second, the State has an interest, too, in protecting children.  *See Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2006).  However, this interest is bound up with "whether [a state] has a significant interest in having a limited process by which an individual can challenge inclusion on [a child abuse registry], and to what extent adding additional processes will interfere with the overarching interest in protecting children from abuse."  *Humphries*, 554 F.3d at 1194.  While the State has an interest in investigating and adjudicating these allegations, the State also has an interest in creating databases that contain accurate and reliable information.

Third, the Court must consider "the fiscal and administrative burdens that [ ] additional or substitute procedural requirements would entail."  *Mathews*, 424 U.S. at 335.  At the pleading stage, the record provides information about the formalities of the process.  For example, the State has 45 days to complete an investigation (ECF

No. 22, PageID #199), and during that time, according to the policy of the Cuyahoga County Department of Child and Family Services, an initial conversation occurs.  But the record contains no information from which the Court would make any determination of the burdens associated with the process as formally outlined or how it operates in practice.

Finally, the Court must consider the risk of erroneous deprivation.  A pre-deprivation hearing is more appropriate where "a wide variety of information may be deemed relevant, and issues of witness credibility and veracity [ ] are critical to the decisionmaking process."  *Mathews*, 424 U.S. at 343–44.  Additionally, given the nature of the allegations, time can be of the essence.  Judicial review on the back end might well provide adequate process to guard against erroneous deprivation.  But it is no longer available.  *See Kyser*, 2024-Ohio-2898, ¶ 14.

In this case, the allegations raise questions about the adequacy of the pre- and post-deprivation processes available to Plaintiffs.  Ms. Thomas alleges that she spoke to an investigator once then received no notice of the disposition, making it impossible for her to pursue post-deprivation relief.  She managed to file an untimely appeal, but that appeal consisted of a phone call, and the evidence against her was never disclosed.  As for Mr. Williams, he was not timely informed of a disposition.  Then, he was misinformed about the length of time that the disposition would affect him.  These allegations place the adequacy of process squarely at issue.  At this stage of the proceedings, the factors on balance either weigh in Plaintiffs' favor or the record

does not contain enough information to make a determination that Plaintiffs were afforded adequate process.

## II.  Statute of Limitations

Section 1983 itself does not provide a statute of limitations.  In such circumstances, federal courts borrow the applicable limitations period from the most analogous one available under State law.  *See Owens v. Okure*, 488 U.S. 235, 249–50 (1989).  Here, the most closely analogous limitations period under Ohio law is the general two-year limitations period for bringing a tort action.  *See* Ohio Rev. Code § 2305.10; *see Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc).

### II.A.  When the Statute Begins to Run

When a cause of action under Section 1983 accrues and begins to run presents "a question of federal law that is *not* resolved by reference to state law."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  The limitations period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the claim."  *Holson v. Good*, 579 F. App'x 363, 366 (6th Cir. 2014).  To ascertain when that occurs, a court determines "what event should have alerted the typical lay person to protect his or her rights."  *Kuhnle Bros., Inc., v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997); *see also Printup*, 654 F. Appx. at 785.  This discovery rule accounts for situations "where the injury complained of may not manifest itself immediately and, therefore, fairness necessitates allowing the assertion of a claim when discovery of the injury occurs beyond the statute of limitations."  *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 470 (6th Cir. 2013) (citing *NCR Corp. v. U.S. Mineral Prods. Co.*, 72 Ohio St. 3d 269, 1995-Ohio-191, 649 N.E.2d 175, 177 (1995)).

26

Courts may grant motions to dismiss on the grounds of an applicable statute of limitations only if "the allegations in the complaint affirmatively show that the claim is time-barred." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)). Generally, it is inappropriate to dispose of a claim as time-barred on a motion to dismiss, *Jodway v. Orlans*, 759 F. App'x 374, 379 (6th Cir. 2018), because "the statute of limitations is an affirmative defense, for which the defendant bears the burden of proof," *Spencer v. City of Hendersonville*, 487 F. Supp. 3d 661, 678 (M.D. Tenn. 2020); *Cataldo v. United States Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). "To avoid dismissal, plaintiffs' complaint must simply assert facts showing that it is plausible that their claims are timely or that the statute of limitations was tolled." *Grover v. BMW of N. Am., LLC*, 434 F. Supp. 3d 617, 630 (N.D. Ohio 2020) (citation omitted).

### II.B.   Plaintiff Justin Williams

Defendants do not dispute that Ms. Thomas's claim is timely. However, they contend that Mr. Williams knew or had reason to know of the disposition of which he complains more than two years before filing suit. (ECF No. 22, PageID #207–08.) Plaintiff asserts that a different set of events triggered the statute of limitations, making his claim timely. (ECF No. 28, PageID #282–83.)

According to the complaint, Mr. Williams learned of his disposition in 2020 when he was refused employment at a youth shelter. (ECF No. 1, ¶¶ 124–26, PageID #18.) After receiving notice, Mr. Williams appealed and a county employee told him that "his disposition would only affect his career with youth for ten years," which by

that time was only three years away.  (*Id.*, ¶ 128, PageID #18.) The Cuyahoga County Department of Child and Family Services upheld Mr. Williams' disposition in April 2020.  (*Id.*, ¶ 129, PageID #18.)  When Mr. Williams contacted the County in 2023 to confirm that the disposition was no longer on his record, Mr. Williams found out for the first time that the disposition would remain in statewide automated child welfare information system for his lifetime.  (*Id.*, ¶ 132, PageID #19.)

### II.B.1. Discovery Rule

Mr. Williams admits that he knew the job-related consequences of his disposition at least by April 2020.  (ECF No. 1, ¶¶ 124−25, PageID #18.)  Instead, he argues that the statute of limitations did not begin to run until the 2023 phone call, when he learned of the full extent of his injury.  (ECF No. 28, PageID #284.)  But the discovery rule does not require a plaintiff to know the full extent of his injury.  "The cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. at 391 (cleaned up).  Even under a stigma plus framework, the injury is complete once Defendant knows, or has reason to know, of the job-related consequence, discoverable through due diligence.  *Sevier v. Turner*, 742 F.2d 262, 272−73 (6th Cir. 1984).  Indeed, Mr. Williams's appeal demonstrates his awareness of the injury.  *See Printup*, 654 F. App'x at 787–88; J.*H. v. Ohio Department of Job & Family Servs.*, No. 2:21-cv-206, 2021 WL 5240231, at *3 (S.D. Ohio 2021).

Taking his allegations as true, Mr. Williams knew of his disposition and his resulting inability to work at the youth shelter at least by April 2020.  That injury triggered the statute of limitations, even if Mr. Williams did not know then that the

disposition would have more permanent and lasting effects.  Such was the case in *Printup*.  654 F. App'x at 787–88.  There, the Sixth Circuit held that the statute of limitations began to run when the plaintiff, a teacher who lost her job as a result of placement on the child welfare registry, suffered both the stigma and the plus.  "Accordingly, [the plaintiff's] constitutional injury occurred when she lost her job as a result of her designation as a child abuser and her placement on Ohio's Central Registry without due process of law."  *Id.* at 787.  For Mr. Williams, those events occurred more than two years before he filed suit, when his disposition caused him to lose out on the job at the youth shelter.  Applying the discovery rule, the statute of limitations bars Mr. Williams's claims as untimely.

### II.B.2. Tolling

Mr. Williams also seeks equitable tolling based on fraudulent concealment. (ECF No. 28, PageID #285.)  Under the fraudulent concealment doctrine, a statute of limitations may be tolled "where there is some conduct of the adverse party, such as misrepresentation, which excludes suspicion and prevents inquiry."  *Lutz*, 717 F.3d at 474 (quoting *Bryant v. Doe*, 50 Ohio App. 3d 19, 552 N.E.2d 671, 675 (Ohio Ct. App. 1988).)  Because the allegations of the complaint, taken as true, demonstrate that Mr. Williams had sufficient notice to protect his rights in 2020, any fraudulent concealment would not have prejudiced him and do not provide a basis to toll the statute of limitations.

In any event, Mr. Williams is not eligible for equitable tolling based on fraudulent concealment.  First, Director Damschroder argues that Mr. Williams cannot rely on fraudulent concealment as to him because the State did not participate

in any of the alleged actions constituting concealment.  (ECF No. 31, PageID #332–33.)  Because fraudulent concealment must be pled against each individual defendant, *Metz v. Unizan Bank*, No. 5:05-cv-1510, 2006 WL 8427066 at *8 (N.D. Ohio Feb. 28, 2006); *Pate v. Huntington Nat'l Bank*, 560 F. App'x 506, 511 (6th Cir. 2014), the Court finds that the statute of limitations bars Plaintiff's claims against Director Damschroder.

As for the remaining Defendants, they argue that Mr. Williams has not met the standard under Rule 9(b) for pleading fraudulent concealment.  (ECF No. 31, PageID #333.)  The parties disagree over the appropriate test for tolling the statute of limitations.  (ECF No. 31, PageID #333; ECF No. 28, PageID #285.)  Whatever the case, tolling "never continues beyond the time that a plaintiff, by exercising reasonable diligence, should have discovered the facts at issue."  *Lutz*, 717 F.3d at 475 (citing *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App. 3d 581, 706 N.E.2d 860, 865 (1998)).  But nothing in the complaint or in Plaintiff's brief suggests diligence on the part of Mr. Williams after he learned of his injury in 2020.

In *Lutz*, the court's analysis turned on the plaintiffs' diligence.  There, they alleged that they relied on falsified accounting statements from defendants and alleged that they had no practical means to verify the information for themselves.  *Id*.  Those allegations survived dismissal.  In contrast, however, the exercise of reasonable diligence on the part of Mr. Williams would have led to the timely discovery of the permanence of his disposition.  That information is publicly available and reasonably accessible.    Plaintiff's  failure  to  make  any  allegation  showing  diligence  is

determinative.  *See Evans*, 434 F.3d at 851.  "Absent some means of diligence, Plaintiff[] [is] not entitled to tolling of the limitations period." *Lutz v. Chesapeake Appalachia, LLC*, 807 F. App'x 528, 532 (6th Cir. 2020).

## III.  Redundancy of Defendants

Plaintiffs filed this action against Cuyahoga County and against two individuals in their official capacities.  (ECF No. 1.)  Defendants object to the individual Defendants as parties to this action, arguing that their inclusion is redundant.  (ECF No. 22, PageID #210.) A suit against an individual in his or her official capacity is "equivalent [to] a suit against the governmental entity," *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994), and acts as "another way of pleading an action against an entity of which an officer is an agent," *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978); *see also Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003).  A suit that is brought against both the entity, and the individual in his official capacity "is 'superfluous' and may be dismissed." *Ruffin v. Cuyahoga Cnty.*, No. 1:16-cv-640, 2016 U.S. Dist. LEXIS 117398, at *6 (N.D. Ohio Aug. 31, 2016) (citing *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013).

Both Jacqueline Fletcher and Chris Ronayne are public officials of Cuyahoga County and are named in this lawsuit only in their official capacities.  Cuyahoga County is also a named Defendant.  While Plaintiffs argue that formal dismissal is unnecessary, the Court finds that dismissal of Ms. Fletcher and Mr. Ronayne from is appropriate.  This dismissal does not affect any claims against Cuyahoga County or Director Damschroder.

**IV.     Claim Barred by Sovereign Immunity**

Finally, Defendants ask the Court to hold that, to the extent that Plaintiffs request the Court to cause the Ohio Department of Job and Family Services to comply with *State* law, that request for relief violates principles of sovereign immunity.  (ECF No. 22, PageID #210; ECF No. 1, PageID #31.)  In response, Plaintiffs confirm that they only seek an order requiring that the agency comply with due process as a matter of *federal* constitutional law.  (ECF No. 28, PageID #286.)  Accordingly, the Court sees no reason to consider the matter further.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss.  Specifically, the Court dismisses the claims of Plaintiff Justin Williams as time-barred but otherwise denies the motion as to Plaintiff Tiara Thomas.  Additionally, the Court **GRANTS** Defendant's motion to dismiss Defendants Jacqueline Fletcher and Chris Ronayne.

**SO ORDERED.**

Dated:  March 31, 2025

 

_____

     J. Philip Calabrese
     United States District Judge
     Northern District of Ohio